■ PAUL KOCOUREK, Appellant, v BOOZ ALLEN HAMILTON INC. et al., Respondents. [925 NYS2d 51]—

Order, Supreme Court, New York County (Richard B. Lowe, III, J.), entered May 20, 2010, which, to the extent appealed from as limited by the briefs, denied plaintiff's motion for leave to amend the complaint, unanimously reversed, on the law and the facts, with costs, and the motion granted.

Plaintiff was employed as an officer of defendant Booz Allen Hamilton Inc.* from 1987 until his retirement in 2007. Prior to March 1992, plaintiff was a participant in a traditional stock rights plan. The plan provided that each year, at defendants' discretion, plaintiff would be given the option of purchasing common shares and class B shares, the latter of which could be exchanged for class A shares. Upon his retirement, plaintiff was entitled to hold the accumulated shares for two years and then sell them back to defendant at a valuation determined in accordance with the stock rights plan.

In March 1992, plaintiff was transferred to an office in Australia. At that time, defendants terminated his right to participate in the stock rights plan and enrolled him in a "shadow stock" program. According to plaintiff, the "shadow stock" rights that this new program entitled him to were designed to mimic the benefits of the stock rights plan without his actually purchasing or selling any shares. In other words, plaintiff claims that he was assured that the economic benefit of the shadow stock would be the equivalent of the benefit he would have realized had he actually had the right to purchase shares. Plaintiff asserts that the class A stock he had already accumulated was not affected by the shadow stock plan. However, he had to exchange all of his class B shares for "shadow shares." This he alleges was done with the understanding that he would still be able to defer the sale of that shadow stock for two years after his retirement, along with any shadow shares he may have continued to be offered before his retirement.

In his original complaint, plaintiff alleged that the purpose of

---

* According to plaintiff, defendant Booz & Company Inc. is a successor-in-interest to Booz Allen Hamilton Inc.

the shadow stock plan was to enable defendants to avoid certain tax and other legal consequences attendant to stock purchase plans in Australia. Accordingly, he asserted, there was no written agreement or other writing memorializing the shadow stock plan, and defendants generally avoided generating any documents referring to the shadow stock plan. However, plaintiff maintained that several people in the company, including the general counsel, the head of human resources and the controller, orally represented to him that he would be compensated through the shadow stock program no differently from those employees receiving common shares. Plaintiff asserted that defendants breached this oral agreement when, upon his retirement, they refused to permit him to defer redemption of any of his shadow shares.

Defendants moved to dismiss the original complaint pursuant to CPLR 3211 (a) (7). They claimed, inter alia, that any award related to defendants' stock, whether of common shares or in the form of shadow stock, was in the nature of a discretionary bonus, so there could be no breach of contract cause of action for not awarding such benefits. The motion court dismissed that claim, holding that "[a]s alleged by [plaintiff], the misrepresentation was one of present fact (i.e., that the shadow stock plan would provide the same economic benefit as the common stock plan), which was collateral to his employment contract, and therefore involved a separate breach of duty, even though it may have induced [plaintiff] to agree to his compensation package. The misrepresentation therefore does not support a claim for breach of contract, but rather, may support a fraud claim" (citations omitted).

Plaintiff appealed, and also moved the motion court for reargument or, in the alternative, leave to replead. This Court affirmed, but for a different reason than given by the motion court. Without commenting on the merits of plaintiff's claim, we found that the alleged oral promise to treat shadow stock as equivalent to common shares violated the statute of frauds because it could not be performed within one year (71 AD3d 511 [2010]). This Court also rejected plaintiff's request that he be allowed to replead his breach of oral contract claim, because the request had been raised for the first time on appeal and, in any event, was "unsupported by facts that would correct deficiencies in the pleadings and thereby render his claims actionable" (*id.* at 512). The motion court also denied plaintiff's motion to reargue or replead, stating that plaintiff had failed to demonstrate how any amended pleading would cure the deficiencies in the existing complaint.

One month after the motion court ruled on plaintiff's request to replead his cause of action for breach of an oral contract, plaintiff moved for leave to amend his complaint to assert a claim for breach of a *written* contract, or, in the alternative, for reargument or renewal of his previous motion to reargue. The motion was based on documents that plaintiff alleged he first received during discovery, while the motion to dismiss was pending. One of the documents was a memorandum to plaintiff, signed by defendant's general counsel, that confirmed discussions between them in which it was agreed that plaintiff would become a participant in the shadow stock program. Plaintiff also alleged the existence of minutes of meetings of defendant's board of directors and of its personnel committee that could be construed to support his claim that the shadow stock program was supposed to confer benefits substantially similar to those of the stock purchase program.

In opposition to the motion, defendants contended, inter alia, that the court was powerless to grant leave because this Court had already denied leave to replead. They also argued that the documents upon which plaintiff was relying to support his breach of written contract claim had been produced a year earlier or were in plaintiff's possession even before he filed the original complaint. Thus, they contended, the new claim was "untimely" and prejudicial. The court denied leave to replead. Without addressing the merits of the motion, it stated that it was bound by this Court's decision denying leave to replead.

It is fundamental that leave to amend a pleading should be freely granted, so long as there is no surprise or prejudice to the opposing party (*see* CPLR 3025 [b]; *Solomon Holding Corp. v Golia*, 55 AD3d 507 [2008]). Mere delay is insufficient to defeat a motion for leave to amend (*Sheppard v Blitman/Atlas Bldg. Corp.*, 288 AD2d 33, 34 [2001]). "Prejudice requires 'some indication that the defendant has been hindered in the preparation of his case or has been prevented from taking some measure in support of his position'" (*Cherebin v Empress Ambulance Serv., Inc.*, 43 AD3d 364, 365 [2007], quoting *Loomis v Civetta Corinno Constr. Corp.*, 54 NY2d 18, 23 [1981]).

Before considering whether plaintiff's delay in seeking amendment of his complaint is prejudicially late, we must first address defendants' contention that, as the motion court found, this Court's refusal to grant plaintiff leave to replead is law of the case. The issue previously before the motion court, and then this Court, was whether plaintiff had stated, or could state upon repleading, sufficient facts to support a claim for breach of an oral contract. This Court found that he could not, because

the statute of frauds barred the claim, and none of the new allegations that plaintiff proposed to introduce changed that fact. However, until the instant motion, plaintiff never alleged the existence of a *written* agreement. Accordingly, neither the motion court nor this Court has had the opportunity to consider the merits of that claim, which, necessarily, cures the statute of frauds violation.

Defendants have not identified any way in which they would be prejudiced were plaintiff granted leave to interpose a breach of written contract claim. They contend that they produced the documents plaintiff now relies on as early as one year before the instant motion to amend. However, again, mere tardiness is insufficient to defeat a motion to amend (*Sheppard*, 288 AD2d at 34). Moreover, defendants cannot dispute that plaintiff had already filed his original complaint by the time they produced the documents, and, more importantly, that they produced some of the documents while their motion to dismiss that complaint was still sub judice. Plaintiff was certainly entitled to wait to move until the motion was decided and he had exhausted his efforts to appeal the decision and seek to reargue the motion. Further, there is no indication that plaintiff was attempting to gain a tactical advantage by delaying the making of the motion. To the contrary, he waited only one month to move after his final effort to limit his claim to breach of oral contract had been rejected.

Additionally, there is no prejudice to defendants because the litigation is still in its initial phase. The breach of written contract claim is substantively identical to the breach of oral contract claim; only now there is documentation to support plaintiff's allegations. Defendants had notice of the claim from the inception and should not have to change their strategy in any significant way to defend the new claim (*see Castle v Gaseteria Oil Corp.*, 263 AD2d 523 [1999] [no prejudice resulted from defendants' delay in seeking to amend answer to interpose defense of release, where plaintiffs knew of existence of written release and had prior notice that defendants contended that the release was enforceable]).

Finally, we note that defendants do not question the merit of the proposed amendment. In any event, we find that the complaint, as amended, is not "palpably insufficient or patently devoid of merit" so that denial of leave would be warranted (*see MBIA Ins. Corp. v Greystone & Co., Inc.*, 74 AD3d 499, 499 [2010]). Accordingly, the motion court should have granted plaintiff leave to amend his complaint. Concur—Mazzarelli, J.P., Andrias, Catterson, Moskowitz and Román, JJ.